# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**VERIZON FLORIDA, LLC,**

       **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:08-cv-277-Orl-DAB**

**FISHEL COMPANY,**

       **Defendant.**

_____

# ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION TO DISMISS [COUNTS III AND VI OF PLAINTIFF'S SECOND AMENDED COMPLAINT] (Doc. No. 22)**
>
> **FILED:** July 31, 2008
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED.**

Plaintiff Verizon Florida, LLC, sued Defendant Fishel Company for breach of a contract provision for indemnification arising from Fishel's allegedly improper relocation of Verizon utility lines during road construction projects in Polk County, Florida and Pinellas County, Florida. *See* Doc. No. 21 ¶¶ 1-2. Verizon's Second Amended Complaint consists of six counts, including two for equitable subrogation (Counts III and VI) that Fishel moves to dismiss for failure to state a claim under Federal Rule 12(b)(6). Doc. No. 22.

**STANDARD OF REVIEW**

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. __, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To satisfy the Rule 8 pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See also Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (citations omitted). Previously, the general standard provided that a complaint should not be dismissed for failure to state a claim unless it appeared beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

However, the former "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41 (1957) has been "retired" in favor of a somewhat heightened requirement for a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Huggins v. Marriott Ownership Resorts, Inc.*, __ F. Supp.2d __, No. 6:07-cv-1514-Orl-22KRS, 2008 WL 552590 (M.D. Fla. Feb. 27, 2008) (discussing *Twombly* in dismissing claims for breach of implied duty of good faith and fair dealing); *see also In re Faro Technologies Securities Litigation*, 534 F.Supp.2d 1248, 1255 (M.D. Fla. 2007) (granting dismissal of certain securities fraud claims).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965. Plaintiff must plead enough facts to state a plausible, and not merely conceivable, basis for the claim. *Id.*

Dismissal is also warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of a plaintiff's complaint, there remains a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## BACKGROUND FACTS[1]

On November 18, 2002, Verizon[2] entered into a contract with Fishel (the "Service Contract'). Doc. No. 21 ¶ 4. Under the Services Contract, Fishel was to provide services to Verizon including, but not limited to, the removal and/or relocation of Verizon utility lines in the State of Florida as required by Verizon. Doc. No. 21 ¶ 6, 22.

On October 30, 2002, the Florida Department of Transportation ("FDOT") let out for public bid a project along United States Highway 19 (the "US 19 Project")[3], consisting of an expansion of roadways through the City of Clearwater in Pinellas County, Florida. Doc. No. 21 ¶ 23. On December 13, 2002, FDOT awarded the bid for the Project to Hubbard Construction Company, Inc. ("Hubbard"). Doc. No. 21 ¶ 24.

---

[1] The facts are either undisputed or read in the light most favorable to each of them on the opposing party's motion to dismiss.

[2] Pursuant to the terms and conditions of the Service Contract, Verizon Florida, LLC is an affiliate and is entitled to all the rights and benefits under the Services Contract and may enforce it in its own name. Doc. No. 21 ¶ 5, 21.

[3] The US 19 Project was officially known as the US 19/SR 55 N.E. Coachman to McCormick Project, Bid File FPN: 256888-1-52-01.

On May 21, 2003, Polk County, Florida let out for public bid a project known as the Spirit Lake Road Capacity Project ("Spirit Lake Road Project")[4], which was the expansion of a two-lane road to a four-lane highway in Polk County. Doc. No. 21 ¶ 7. On September 22, 2003, Polk County awarded the bid for the Project to Mid-State Paving Co., Inc. Doc. No. 21 ¶ 8.

In connection with both the US 19 Project and the Spirit Lake Road Project, Verizon was required to remove and relocate certain utility lines to facilitate the work being performed by the road construction workers. Doc. No. 21 ¶ 9, 25. Verizon arranged for Fishel to perform the utility line removal and relocation work on the US 19 Project[5] and on the Spirit Lake Road Project pursuant to the Service Contract.

Hubbard began work on the US 19 Project in the early part of 2003. Doc. No. 21 ¶ 28. Subsequent to beginning work on the US 19 Project, Hubbard asserted it encountered delays with the US 19 Project due to the untimely and improper removal or relocation of Verizon's utility lines. Doc. No. 21 ¶ 29. Hubbard asserted claims for additional costs and damages against the FDOT, and FDOT awarded Hubbard an additional 218 days of delay with a total value of $633,847.37; FDOT apportioned $310,847.45 to Verizon. Doc. No. 21 ¶¶ 30, 31. Verizon contends that Fishel was responsible for the removal and relocation of Verizon's utility lines for the US 19 Project, and Fishel failed to do so in a professional workmanlike manner. Doc. No. 21 ¶ 32, 70.

Mid-State Paving began work on the Spirit Lake Road Project on or about September 29, 2003. Doc. No. 21 ¶ 10. Subsequent to beginning work on the Project, Mid-State Paving asserted that

---

[4]Bid File #03-109.

[5]Verizon arranged for Fishel to perform the utility line removal and relocation work on the US 19 Project pursuant to a bid award dated January 8, 2003 and assigned Work Order No. 7P001AK (the "US 19 Bid Award"). Doc. No. 21 ¶ 26. The work specified under the US 19 Bid Award was to be completed and "in accordance with and subject to the terms and conditions" of the Service Contract. Doc. No. 21 ¶ 27.

it encountered delays and interferences in connection with the Project due the untimely and improper removal or relocation of Verizon's utility lines. Doc. No. 21 ¶ 11. As a result of the alleged delays arising from the removal and relocation of Verizon's utility lines, Mid-State Paving asserted that it had a cause of action for additional costs and damages against parties that included both Polk County and Verizon. Doc. No. 21 ¶ 12. Mid-State Paving advised both Polk County and Verizon of its claims related to delays on the Spirit Lake Road Project, of its intent to pursue litigation to recover its claimed damages, and demanded pre-suit mediation pursuant to its contract with Polk County. The County also advised Verizon of its intent to assert third-party and other causes of action against Verizon for damages related to Mid-State Paving's claims that Verizon's utility lines were not removed or relocated in a timely or proper manner. Doc. No. 21 ¶ 13. Pursuant to the Services Contract, Fishel was responsible for the removal and relocation of Verizon's utility lines as they impacted the Spirit Lake Road Project. Doc. No. 21 ¶ 14.

Verizon subsequently advised Fishel of the Mid-State Paving's claims and the pre-suit mediation, demanding that Fishel hold Verizon harmless and provide a defense and indemnification from the claims as stated in the Services Contract. Doc. No. 21 ¶ 15. Fishel requested and reviewed documents and attended the pre-suit mediation but did not provide a defense to Verizon; Fishel also failed and refused to indemnify or hold harmless Verizon from the claims of Mid-State Paving and the County. Doc. No. 21 ¶ 16. Verizon made a second demand on Fishel on February 8, 2007, which was again rejected. Doc. No. 21 ¶ 17. Fishel refused to contribute any money towards the settlement of the claims or the costs and attorney's fees incurred by Verizon in connection with the claims. Doc. No. 21 ¶ 18. Verizon, Polk County and Mid-State Paving entered into a settlement agreement resolving Mid-State Paving's claims, including claims Mid-State Paving or the County may have

asserted against Fishel. Doc. No. 21 ¶ 19. Verizon advised Fishel of the anticipated terms of the settlement on September 27, 2007, but Fishel did not respond. Doc. No. 21 ¶ 20.

## ANALYSIS

Verizon filed suit on October 4, 2007 asserting six counts against Fishel arising from the two Projects: breach of express contractual warranty, contractual indemnification, and equitable subrogation, as to the US 19 Project and as to the Spirit Lake Road County Project. Fishel now moves to dismiss the two equitable subrogation claims.

*1. New York state law applies*

Although Fishel argues Florida law of equitable subrogation in its Motion to Dismiss, it appears that New York law governs Verizon's claims. The parties agreed in the Service Contract that the "validity, interpretation and performance" of the Service Contract would be "governed by the procedural and substantive laws of the state of New York without resort to conflicts of laws." Doc. No. 24-2 at 27.

*2. Equitable subrogation under New York law*

Verizon contends that New York law does not set forth specific pleading elements with respect to a cause of action for equitable subrogation. Doc. No. 24 at 6 ¶ 13. Fishel does not argue New York law at all, citing only Florida case law. Doc. No. 22 at 3. As one federal court applying New York law on subrogation explained, the difference between indemnity and subrogation is one that is often confused:

> [P]laintiff's claim against the debtor is solely contractual based on the Agreement of Indemnity. The equitable doctrine of subrogation has no application here. To understand this it will be useful to discriminate between several legal terms of art and then to examine briefly the equitable doctrine of subordination.

An "indemnitor" is one who agrees by contract to indemnify or hold harmless the indemnitee from a liability, loss or obligation which the indemnitee may incur to an obligee on some basis (contract, tort or other ground for liability) independent of the indemnity itself. A "guarantor" is one who is required by contract to pay to an obligee the obligation owed by the primary obligor to the obligee in the event that the primary obligor defaults. The term "surety" is generally used to refer to one or more parties each of whom is liable to the obligee on a bail bond or other bond or undertaking. . . . Laymen, lawyers and even courts sometimes incorrectly use these three terms interchangeably but the result can only be confusion.

The doctrine of equitable subrogation is aptly summarized in 23 New York Jurisprudence, Second Edition (2006), Contribution, Indemnity and Subrogation § 114 as follows:

§ 114 "Legal" subrogation based on equitable principles –

> "Legal" subrogation, which is so designated because it arises by operation of law rather than by virtue of any express contractual or statutory provision, does not depend upon privity or contract, express or implied, and is not limited to sureties or quasi-sureties, but is founded on the facts and circumstances of each particular case and the principles of natural justice. It is a doctrine taken from the civil law, based on equitable principles, and designed to further justice and to prevent unjust enrichment.

> Pursuant to the doctrine of equitable subrogation, where property of one person is used to discharge an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lienholder. The doctrine of subrogation applies where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor, or in place of the creditor, and it must be administered in such a manner as to accomplish what is just and fair between the parties. It has been adopted to compel the ultimate discharge of an obligation by the person who in justice, equity, and good conscience ought to pay it.

As is clear from this analysis in New York Jurisprudence, there is one key element of subrogation which is missing here. Subrogation is where party "A" is subrogated to the rights of a creditor of party "B" whose claim against B has been paid by A. The key element is that the party which A paid had a claim against B. If the party A paid did not have a claim against B, there is nothing to subrogate.

*In re Sanchez,* 365 B.R. 414, 419-20 (Bkrtcy. S.D. N.Y. 2007) (quoting in 23 NEW YORK JURISPRUDENCE, SECOND EDITION (2006), Contribution, Indemnity and Subrogation § 114 (footnotes omitted)).

Although Fishel incorrectly argues Florida law applies, Fishel did appropriately argue that Verizon cannot state a claim under the doctrine of equitable subrogation (also applicable under New York law) because Verizon is primarily liable for the debts paid on both Projects. Doc. No. 22 at 3. Fishel also argues that Verizon's equitable subrogation claim fails because Verizon has not alleged that it paid the entire debt to FDOT in that "there are additional charges which have not yet been resolved by FDOT relating to the US19 Project which may also comprise a portion of Verizon's damages." Fishel also argues that Verizon has also failed to allege that it obtained a release in favor of Fishel from FDOT.

By Verizon's own account, with respect to both the Spirit Lake Road and US 19 Projects, it has alleged: (1) the existence of a relationship between Verizon and Fishel; (2) deficiencies in the work completed by Fishel on both projects; (3) damages incurred as a result of Fishel's work on the projects; (4) potential liability of Verizon on both Projects for the damages caused by Fishel; and (5) payment by Verizon on both projects to avoid the liabilities caused by Fishel. Doc. No. 21.

The Court finds what is missing from the allegations underlying Verizon's equitable subrogation claim is any allegation that Fishel has a direct relationship with FDOT or Polk County or that Fishel is primarily liable to either entity. Under New York law, "the key element is that the party which A paid had a claim against B. If the party A paid did not have a claim against B, there is nothing to subrogate." *In re Sanchez,* 365 B.R. at 419-20. Without such factual allegations, as in *In*

*re Sanchez*, Verizon's claim "is solely contractual based on the agreement of indemnity" or breach of warranty and "the equitable doctrine of subrogation has no application here." *See id.*

There is no allegation in the Second Amended Complaint that FDOT or Polk County had a claim primarily against Fishel, or any claim other than a potential claim against Verizon for violation of its statutory duty to relocation its utility lines. Verizon alleges that Verizon itself had a statutory duty to remove or relocate its utility lines upon request of the proper governmental authority, including FDOT or Polk County. Doc. No. 21 ¶¶ 47-48, 67-68. Because Verizon would be directly liable to FDOT or Polk County, Verizon's claims against Fishel sound in contract, for breach of warranty or for indemnification, claims that Verizon has already asserted (Counts I, II, IV, and V) in the Second Amended Complaint.

Fishel's Motion to Dismiss Counts III and VI of the Second Amended Complaint is **GRANTED**. Counts III and VI for equitable subrogation are **dismissed.**

**DONE** and **ORDERED** in Orlando, Florida on September 12, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record